

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

TH:EJD/DR                                   *271 Cadman Plaza East*
F. #2023R00634                              *Brooklyn, New York 11201*


September 26, 2023


By ECF


The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. Abel Mora
>        Docket No. 23-CR-383 (FB)

Dear Judge Levy:

The government respectfully submits this letter in anticipation of defendant Abel Mora's arraignment on the indictment (the "Indictment," ECF No. 1) and application for bail. For the reasons set forth below, the defendant's release pending trial would pose a significant danger to the community and no combination of bail conditions would ensure the defendant's continued appearance before the Court. Accordingly, the government respectfully requests that the Court find the defendant poses a danger to the community and a flight risk and enter a permanent order of detention.

    I.    Factual and Procedural Background

        A.  The Charges

Abel Mora is charged with two counts of being a felon-in-possession of ammunition, in violation of Title 18, United States Code, Section 922(g). The defendant was indicted by a grand jury sitting in the Eastern District of New York on September 21, 2023. (See ECF No. 1). The charges stem from two separate shootings perpetrated by the defendant on August 13, 2023 in both Queens and Brooklyn that put the lives of innocent bystanders, including children, at risk and left one victim with a gunshot wound to the arm.

        B.  The Brooklyn Shooting

On August 13, 2023 at approximately 9 p.m., the defendant shot a victim standing outside of 3441 Fulton Avenue, a convenience store in a mixed residential and commercial neighborhood in East New York, Brooklyn. At the location of the shooting, neighborhood

residents, including children, were out on Fulton Street and Nichols Avenue in the vicinity where the defendant opened fire.  Video surveillance from the incident captured adults and children running for safety at the time the defendant began shooting at the victim.

Video surveillance footage shows that, at approximately 9 p.m., the defendant shook hands and spoke with the victim ("the Victim") outside of a convenience store on the corner of Fulton Street and Nicholas Avenue.  The defendant then moved down the block and crossed the street.  Shortly thereafter, the defendant returned to the front of the convenience store and again engaged the Victim in conversation.  The defendant then turned away from the Victim, reached into his pocket and pulled out a firearm.  The defendant racked the firearm's slide, chambering a round of ammunition and turned back to the Victim, pointing the firearm directly in his face.[1]  The defendant then attempted to remove the Victim's backpack, but the Victim resisted and the two struggled until the Victim fell to the ground.  During the violent struggle, the defendant pointed the firearm in every direction, without any apparent regard for the safety of civilians, including children, standing in his immediate vicinity.  Once the Victim was on the ground, and the defendant was standing over him with the gun pointed at him, the Victim removed his backpack.  The defendant then grabbed the Victim's backpack and fled down the street.  The defendant fled to the front of 381 Etna Street, where he was met by a male on a scooter who dropped off a passenger, picked up the defendant and fled the location.  During the course of this robbery, the defendant shot at the Victim twice, striking the Victim one time in the left arm.  Images of the defendant immediately before and during the attack on the Victim are below.



---

[1]        The government will provide a copy of the video surveillance footage to the Court for its review upon request.

Police responded to the scene where they located the injured Victim inside the convenience store at Fulton Street and Nichols Avenue.  The Victim was transported by ambulance to the hospital.  Police recovered two discharged 9 mm shell casings from the crime scene.  Police further recovered numerous pieces of video surveillance depicting the defendant inside and outside of the convenience store prior to the shooting and capturing the entire shooting and robbery.  Images of the defendant inside the convenience store prior to the shooting are below.



Two detectives assigned to the 75th Precinct's detective squad the New York City Police Department reviewed the above-described video surveillance and recognized the shooter as Abel Mora, an individual that they had just arrested on June 11, 2023 for Robbery in the First Degree in violation of New York State Penal Law ("N.Y.P.L.") Section 160.15.

C.  The Queens Shooting

Only hours earlier on August 13, 2023, the defendant committed a shooting in the Far Rockaway neighborhood of Queens, New York using the same firearm that he brought to Brooklyn later that night and used to shoot and rob the Victim.

Just before 1 p.m., two males ("Individual-1 and Individual-2") got in a fistfight outside a grocery store located across the street from 14-10 New Haven Street in Queens, where the defendant resides with his mother (the "Defendant's Residence").  Individual-1 ran from the fight, towards the Defendant's Residence, and Individual-2 began to follow Individual-1 towards the Defendant's Residence.  As Individual-1 approached the Defendant's Residence, Individual-2 turned back and went to his car ("the Vehicle"), which was parked just across the street.  Shortly thereafter, Individual-1 and the defendant emerged from the direction of the Defendant's Residence.  The defendant then walked into the street where the Vehicle was parked and raised his arm out in the direction of the Vehicle, at which time a shot rang out.  The Vehicle immediately sped off and the defendant chased the Vehicle down the street.  Notably, this shot was fired so close to a group of adults and children that the adults fled into a store, momentarily

3

leaving two small children behind on the street where the defendant was pursuing the fleeing vehicle.  A wheelchair-bound man was also trapped within feet of the shooting.

The defendant then ran down the block to the intersection of New Haven Street and Beach 13th Street, where he again encountered the Vehicle.  In the middle of this residential block, the defendant opened fire on the Vehicle, firing eight shots at the Vehicle and shooting a piece of the driver's side mirror off the Vehicle.  Someone inside the Vehicle returned fire at the defendant, shooting at least two times.  NYPD'S Evidence Collection Team recovered a total of ten discharged shell casings at this intersection—eight from the defendant's firearm and two from a second firearm.

The defendant and the Vehicle then had a final encounter where the defendant pointed his firearm at the Vehicle and then fled on foot.  The Vehicle then sped away.

Members of the NYPD responded to the scene of the shooting and retrieved video surveillance from numerous locations capturing the above-described events.  Law enforcement further received photographs of the defendant during the above-described incident that were taken by a citizen from their window.  A photograph of the defendant shortly after the shooting is depicted below.



D. The Microscopic Examination of Ballistic Evidence

A microscopic examination of ballistic evidence confirms that the defendant used the same gun in both the Brooklyn shooting and the Queens shooting.

II.    The Defendant's Arrest and Premises Search

On September 26, 2023, the defendant was arrested and a search was executed at the Defendant's Residence.  A loaded 9mm firearm with a 17-round magazine was recovered by law enforcement in the radiator in the bedroom in which medication, a credit card, Medicaid paperwork, and a bank statement, among other items, were found in the defendant's name.

III.   The Defendant's Criminal History

The defendant's criminal history includes a prior violent felony conviction for Assault in the Second Degree, stemming from the defendant's July 12, 2020 shooting of three victims in Queens, New York.  The defendant currently stands charged by complaint in Kings County with Robbery in the First Degree and related charges, in violation of N.Y.P.L. § 160.15, for a carjacking that he committed with others on June 11, 2023.

IV.   Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(e).  A finding of dangerousness must be supported by clear and convincing evidence.  See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995).  A finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); see also United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

The Bail Reform Act lists four factors to be considered in the detention analysis, whether for risk of flight or dangerousness: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt.  See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee."  United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

5

Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight.  See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight,"); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

Under the Bail Reform Act, the government may proceed by proffer, United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986), (same).  Furthermore, "[t]he rules of evidence do not apply in a detention hearing." United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); see also United States v. Agnello, 101 F. Supp. 2d 108, 110 (E.D.N.Y. 2000) ("[E]vidence may be supplied through proffers and hearsay information, and the rules of evidence do not apply.").

V.      The Defendant Should Be Detained

A.  Nature & Circumstances of the Crime

The defendant committed two dangerous and premeditated shootings in the same day on public streets in residential neighborhoods of Brooklyn and Queens.  Both shootings could have easily resulted in the deaths of the defendant's targets, but just as easily could have taken the lives of innocent bystanders.  As described above, and as revealed in the video footage capturing the Brooklyn shooting, the choreographed attack appears designed to shoot and rob the Victim.  The defendant shot at the Victim at extremely close range and engaged in a struggle with the Victim during which the defendant was fighting while pointing the firearm in all directions in front of a corner store with both workers and customers inside and out.  Only feet away from the shooting and struggle were groups of people, including children.  The defendant's actions that night threatened the lives of many community members.

The Queens shooting is no different.  In broad daylight, the defendant left his residential building and opened fire on a car with multiple people inside.  The defendant did so without concern that he was feet away from men, women and children outside of a local store.  The defendant then engaged in a chase around the neighborhood with the Vehicle, unloading eight more rounds of ammunition at the Vehicle as he ran up and down residential streets with people in their homes and yards.  The defendant's actions showed no regard for the safety and well-being of members of his community.

B.  History & Characteristics of the Defendant

The defendant's criminal history, outlined above and described in greater detail in the Pretrial Services Report, is comprised of one prior felony involving violence and one open

robbery case.  Further, the defendant is a known member of the Trinitarios, a violent street gang operating out of the East New York neighborhood of Brooklyn.

The underlying facts of the defendant's prior conviction for Assault in the Second Degree further evidence the defendant's danger to the community.  On July 12, 2020, shortly after midnight, the defendant pulled up to a large commercial intersection in Flushing, Queens, got out of his car with a firearm and opened fire, shooting three individuals.  The first victim ("Victim-1") was standing in a parking lot when he heard gunshots, felt intense pain to his torso and collapsed.  Victim-1 was shot multiple times in the torso and the arm, underwent surgery and survived.  The second victim ("Victim-2") was in the same parking lot, when he heard gunshots, felt pain and realized he had been shot in the chest.  Victim-2 drove himself to the hospital and was treated for his injuries.  The third victim ("Victim-3") was standing near Victims 1 and 2—he was shot in the arm and also treated at a nearby hospital.  The defendant was arrested on August 13, 2020 and charged with Attempted Murder in the Second Degree and related crimes.  The defendant ultimately pleaded guilty in February of 2022 to felony assault.

The defendant's open robbery case in Kings County is also a crime of violence.  The defendant and co-conspirators threatened a victim with a metal pipe and stole his car on June 11, 2023.  The victim was able to track his car using an air tag device on his key ring and the defendant was arrested later that same day.

### C.  Danger Posed by the Defendant's Release

As demonstrated above, the defendant's decision to plan and carry out the shootings described above, coupled with his history of violent criminal conduct, including his involvement in the shooting of three individuals in 2020, show that the danger to the community posed by the defendant's release would be serious.

### D.  Risk of Flight

The defendant also poses a significant risk of flight, given the nature of the offense charged and strength of the government's case.  As described above, the defendant's role in both shootings was entirely captured on video surveillance and a witness photographed the defendant during the Queens shooting.  Additionally, the defendant used the same firearm to commit both shootings and committed the Queens shooting in front of his own residence.  Accordingly, the evidence is strong.

Charged with two counts of being a felon-in-possession of ammunition, the defendant faces a significant term of imprisonment of up to 30 years in prison.  Further, the defendant's estimated advisory sentence under the United States Sentencing Guidelines is 168-210 months' imprisonment.

When the incentives to flee are so strong, as here, no combinations of sureties and other restrictions can assure their appearance.  See, e.g., United States v. Corbett, et al., 20-CR-213 (KAM) (E.D.N.Y. Aug. 31, 2020) (affirming detention where defendant Beckett was charged with accessory after-the-fact to attempted murder-in-aid-of-racketeering and was a member of a violent street gang on the grounds that he both posed a danger to the community and no combination of conditions could ensure his return to court).  That remains true even if the

defendants accept electronic surveillance and home confinement.  See <u>United States v. Orena</u>, 986 F.2d 628, 632 (2d Cir. 1993) ("electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology") (internal quotation marks omitted).

    VI.    <u>Conclusion</u>

In sum, when the facts are reviewed in light of the four factors to be considered in a detention analysis, it is clear that the defendant is both a serious danger to the community and a significant risk of flight.

For the reasons set forth above, defendant Abel Mora should be held without bail pending trial.

Respectfully submitted,

BREON PEACE
United States Attorney

By: _____

Emily J. Dean
Dana Rehnquist
Assistant U.S. Attorneys
(718) 254-6120 (Dean)